1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PHILIPS NORTH AMERICA LLC, a
Delaware Company, and KONINKLIJKE
PHILIPS N.V., a Company of the
Netherlands,

           Plaintiffs,

      vs.

SUMMIT IMAGING INC., a Washington
Corporation; LAWRENCE R. NGUYEN,
an individual; and DOES 1-10, inclusive,

          Defendants.

NO. 2:19-cv-01745

**COMPLAINT FOR:**

  **(1) CIRCUMVENTING A
      TECHNOLOGICAL MEASURE –
      17 U.S.C. § 1201;**

  **(2) MODIFYING COPYRIGHT
      MANAGEMENT INFORMATION –
      17 U.S.C. § 1202;**

  **(3) TRADE SECRET
      MISAPPROPRIATION AND
      VIOLATIONS OF THE DEFEND
      TRADE SECRETS ACT –
      18 U.S.C. § 1836**

  **(4) TRADE SECRET
      MISAPPROPRIATION AND
      VIOLATIONS OF WASHINGTON'S
      UNIFORM TRADE SECRET ACT –
      RCW 19.108, *ET. SEQ***

  **(5) FALSE ADVERTISING –
      15 U.S.C. § 1125(a);**

  **(6) UNFAIR COMPETITION –
      RCW 19.86.020**

**<u>JURY DEMAND</u>**

COMPLAINT - 1
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1    Plaintiffs Philips North America LLC ("Philips USA") and Koninklijke Philips N.V.

2  ("Philips N.V.") (hereinafter, collectively the "Plaintiff" or "Philips"), allege as follows against

3  Defendants Summit Imaging Inc. and Mr. Larry R. Nguyen ("Nguyen"), CEO and sole

4  Governor of Summit, ("Summit" and collectively with Nguyen, "Defendants"):

5    1.    Philips is a well-known leader in the business of developing, manufacturing,

6  selling, supporting, maintaining, and servicing medical imaging systems used at hospitals and

7  medical centers. Philips' medical imaging systems include Philips' proprietary hardware and

8  software, which include Philips trade secrets, which are necessary to operate, service, and

9  repair Philips' systems.  Philips' proprietary software enables certain functions on Philips

10  medical imaging systems, which can only be modified by Philips, and the software enables

11  Philips to control, update, and track the use of its ultrasound system software in the

12  marketplace.  Philips' customers pay for enabled features and additional options.  These

13  features and options enable software functionality and selectively enable interoperability with a

14  variety of related Philips hardware devices.

15    2.    Philips' high quality products and proprietary software have made Philips a

16  trusted producer, manufacturer, and supplier of medical imaging systems worldwide, and in the

17  course of Philips' business, Philips has garnered substantial goodwill and has advertised and

18  marketed worldwide the Philips' goods and services under the Philips trademarks.

19    3.    Philips' access controls protect Philips copyright-protected software as part of

20  Philips automated system of managing the terms and conditions upon which Philips software

21  may be accessed.

22    4.    In a fraudulent and intentional scheme, Summit illegally and without Philips'

23  consent hacks into Philips' proprietary software to modify, tamper with and alter Philips'

24  ultrasound systems to unlawfully enable software features in order to access options and add-on

25  features which they are not licensed to use and have not paid for.  Summit accomplishes this

26  illegal scheme by circumventing Philips access controls.  Summit engages in such conduct in

27  order to promote and support its repair parts business and its service contract business.

COMPLAINT - 2
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

5.      Summit is not authorized to tamper with the proprietary software to enable features without Philips' permission. Summit's hacking and tampering modifies Philips' copyright-protected software to create ultrasound systems in configurations Philips has never sold or supported. These modifications give Summit and its customers unlawful access to Philips proprietary software, trade secrets, and enables Summit and/or its customers to force compatibility and interoperability between Philips medical imaging devices and related hardware devices.

6.      Upon information and belief, Summit has created a software program called Adepto, which is a software tool specifically designed to hack into Philips medical imaging devices by circumventing Philips' access controls.  The Adepto hacking tool allows Summit and its customers to gain unauthorized access to the proprietary software within Philips medical imaging systems.

7.      In furtherance of its scheme, Summit provides training services to its customers that include specific instructions about how to circumvent Philips' access controls.

8.      Although Summit is surreptitiously using Adepto to hack into Philips' proprietary software, to circumvent Philips' access controls and to modify Philips proprietary software without Philips' consent, it falsely markets and advertises to the public that its Adepto hacking tool is "the legal solution for customers aware of the issues around licensing, copyright, an intellectual property" and the "only legal alternative to OEM" services.

9.      Philips brings this action against Summit to put a stop to Summit's illegal scheme. In addition to recovering damages caused by Summit's unlawful scheme, Philips seeks a permanent injunction prohibiting Summit from using Philips' proprietary material; from misappropriating Philips' intellectual property; from hacking Philips software; and an order requiring an accounting and return of all Philips' proprietary material unlawfully in Summit's possession, shared by Summit, or obtained by Summit through Summit's unlawful acts, including an identification of all persons or entities such information has been obtained from or shared with.

COMPLAINT - 3
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**THE PARTIES**

10.     Plaintiff Philips North America LLC ("Philips USA") is a Delaware limited liability company, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts.  Philips USA's business includes, among other things, developing, manufacturing, selling, supporting, maintaining, and servicing Philips' medical imaging systems.

11.     Plaintiff Koninklijke Philips N.V. ("Philips NV") is a public limited liability company organized and existing under the laws of the Netherlands, with a principal place of business at High Tech Campus 5, Eindhoven Netherlands 5656 AE.  Philips NV is the sole owner of numerous Philips' subsidiaries, including Plaintiff Philips North America LLC.

12.     Based upon publicly available information obtained from the State of Washington Secretary of State and belief, Defendant Summit Imaging Inc. is a corporation organized and existing under the laws of the State of Washington, with its principle place of business at 15000 Woodinville Redmond Rd. NE Ste. B800, Woodinville, WA, 98072-4502.

13.     Based upon information and belief, Defendant Larry K. Nguyen is an individual residing in Woodinville, WA, Snohomish County. Nguyen is a principal owner, Governor, Chief Executive Officer, and Chief Technology Officer of Summit.

14.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Does 1-10 inclusive, and each of them are unknown to Philips at this time. Philips therefore sues Does 1-10 by such fictitious names. Philips will amend the Complaint to reflect the true names and capacities of said Does 1-10 when that information has been ascertained. Philips alleges upon information and belief that each of Does 1-10 is an agent, co-conspirator, employee and/or partner of Summit and/or Nguyen, and each was involved in and caused the wrongdoing alleged herein, and is jointly and severally liable for all of the conduct alleged herein.

**JURISDICTION AND VENUE**

15.     This action is for circumventing a technological measure that effectively

COMPLAINT - 4
No. 2:19-cv-01745

1   controls access to a protected work arising under the Digital Millennium Copyright Act
2   ("DMCA") 17 U.S.C. §§ 1201, 1202 *et seq.*, for trade secret misappropriation under 18 U.S.C.
3   § 1836, for violations of Washington Trade Secrets Act, RCW 19.108, *et seq.*, and for false
4   advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for unfair methods of
5   competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce,
6   RCW 19.86.020.

7          16.    This Court has subject matter jurisdiction over this action pursuant to
8   28 U.S.C. §§ 1331 and 1338(a), 17 U.S.C. § 100 *et. seq.*, and 28 U.S.C. §1369 (supplemental
9   jurisdiction) and the doctrines of ancillary and pendant jurisdiction.

10         17.    This Court has personal jurisdiction over Summit, because Summit has their
11  principal place of business located in this district, and because Nguyen himself resides within
12  this district.  Moreover, Summit has transacted business in this district and committed
13  infringement and tortious acts within the State of Washington by offering and advertising
14  products and/or services knowing that such marketing is false, likely to deceive a large portion
15  of the relevant public and causes harm to Philips in this district.  Upon information and belief,
16  Summit's sales representatives target and/or solicit business from Washington residents.  Upon
17  information and belief, Summit's business in this district includes tampering with Philips'
18  proprietary software and physically tampering with Philip's ultrasound systems, disassembling
19  of Philips' medical device systems physically and by circumvention of technological measures
20  that control access to Philips' protected works and by use of misappropriated trade secrets
21  belonging to Plaintiff.

22         18.    Venue is proper within the Western District of Washington pursuant to
23  28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this district and the asserted
24  claims arise from Defendants' conduct within this district, including the solicitation of business
25  and the deceptive promotion of its products and/or services while making unauthorized and
26  infringing use of Philips' copyrights and trade secrets.

27

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## BACKGROUND AND FACTS RELATED TO THIS ACTION

### ~Background Related to Philips~

19.     Philips is well-known in the healthcare industry as a trusted provider of electronic medical imaging devices for use in healthcare facilities by healthcare providers.

20.     Philips is among the premier medical imaging device companies in the United States and supplies healthcare providers throughout the United States with medical devices.  Philips provides a variety of high quality products that include, but are not limited to, imaging devices such as ultrasound systems, computed tomography (CT) scanners, positron emission tomography (PET) scanners, X-ray machines, magnetic resonance (MR) scanners, and nuclear medicine scanners.

21.     Philips develops, manufactures, sells, and subsequently supports, maintains, repairs and services these medical imaging systems through proprietary hardware, software, and trade secrets contained within the proprietary software and hardware.

22.     In addition to the specific products and services that Philips offers, the Philips name has also become commonly known as the provider of specific branded lines of medical imaging devices, including high-end and premium ultrasound imaging devices under the "CX," "HD," "ClearVue," "Sparq," "VISIQ," "Xperius," "Affiniti," and EPIQ brand names (collectively, Philips' "Ultrasound Systems"). In addition to these Ultrasound Systems, Philips manufactures and sells related hardware devices including various models of ultrasound transducers.

23.     Philips ultrasound transducers come in a wide variety of forms, each specific to a particular Ultrasound System, to a particular market segment, and to particular clinical segments.

24.     In addition to Philips' Ultrasound Systems, Philips is also commonly known as a provider of specific branded lines of x-ray machines known as the "Integris," "FD Xpers," "Selaron," "Allura," and "FD Allura" models; of CT and/or PET scanners known as the "Brilliance," "Ingenuity," "IQon," "iCT," "Big Bore," and "MX16" models; of a series of

COMPLAINT - 6
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

magnetic resonance (MR) scanners known as the "Ingenia" models; and of a series of nuclear medicine and/or other scanners known as the "BrightView" models.

### ~Philips Owns Software Copyrights And Has Implemented Strict Access Controls In The Ultrasound Systems~

25.     Philips' Ultrasound Systems are complex pieces of medical equipment that rely heavily on proprietary software and trade secrets that accompany each system.  That software was developed by and is owned by Philips.

26.     The specific versions and functionalities of the Ultrasound Systems enabled on a particular machine can vary, and Philips licenses the use of features on each specific machine. Because the proprietary software enabled on the Ultrasound Systems allows them to function, the proprietary software includes strict access controls to limit access to software features.  These access controls also control access to optional software, which can enable additional system features and which Philips licenses to end users for a fee.

27.     Philips has sold and sells Ultrasound Systems driven by one of two software platforms: (1) Philips Voyager Platform and (2) Philips Common Platform software.  Each of these platforms was created by, and is owned by, Philips and includes Philips' confidential and proprietary information, intellectual property, and trade secrets.

28.     Each Ultrasound System, whether driven by Voyager Platform software or Common Platform software, includes both model specific features and machine specific set features that Philips enables on each Ultrasound System pursuant to the license that the end user purchases.  An Ultrasound System may also support optional hardware add-ons and features, like ultrasound transducers, which Philips can enable if the end user purchases an additional license.

29.     Philips uses multiple layers of technological controls to protect Philips' copyright-protected works from unauthorized access.  These controls include user specific access codes and hardware keys, which enable the software access and control features for a particular registered user. These user specific access controls permit access to enabled Philips

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

tools and features based on a user's registered access authorization level.  These controls also include machine specific access controls which only permit user access to the features and tools that have been enabled on a specific machine. Philips further protects its trade secrets and proprietary software with both contractual restrictions and access controls which only allow individuals access to software and informational material consistent with the authorization level of their user credentials.

30.     Each specific Ultrasound System includes certain software and hardware features that may only be used when a particular licensable feature is enabled for the specific Ultrasound System.  For each Philips' Ultrasound System sold by Philips, only the licensed features and tools purchased for that specific system are enabled, and only the specific authorized users of the machine can access the enabled features and software options.

31.     Philips' optional licensable features control access to Philips' proprietary software and limit the options available on each specific Ultrasound System.  Features and add-ons that have not been licensed are not accessible on the Ultrasound System or by the authorized user. Any attempt to use an unlicensed feature on an Ultrasound System will result in an error message that the feature is not compatible with the system and/or the machine specific access controls will prevent access to the unlicensed feature.  If a specific hardware add-on requires a software feature be enabled to make use of such hardware, absent the required software, Philips Ultrasound Systems will report an incompatible device and the related software will be disabled.

32.     For example, if a user attaches an ultrasound transducer to a Philips Ultrasound System, but the related software is not enabled for that Ultrasound System, the imaging functionality will be disabled and the user will receive an error message informing the user that the transducer is incompatible with that specific Ultrasound System.

33.     The systems also contain other software features, including trade secret features, which can only be accessed by individuals with the necessary authorization levels. These features include certain onboard service, calibration, and diagnostic features and tools.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

34.     Philips has spent considerable time and money creating this software and developing access controls to limit and control access to these features in the manners described above. Philips controls who holds a license for specific restricted tools and features, and requires end users to register for authorized access.

35.     Unauthorized access to or changes to a Philips Ultrasound Machine or its software puts Philips' proprietary software and trade secret information at serious risk, and harms Philips' ability to control access to its proprietary software, and use of its Ultrasound Systems.

**~Summit Is Modifying Philips' Ultrasound Systems as a Regular Course of its Business~**

36.     Upon information and belief, by, through, and at the direction of its CEO and CTO Nguyen, Summit operates its unlawful scheme from its headquarters in Woodinville, Washington.

37.     Summit sells customers service contracts, which include the repair and service of customers' Philips Ultrasound Systems. Philips has not provided authorized access credentials to Summit that would enable Summit to access Philips Ultrasound System software in excess of standard clinical user level access. However, Summit falsely markets and advertises that it can repair and service Philips' Ultrasound Systems in ways that fall well outside the bounds of standard clinical user level access.

38.     Because Summit is not authorized to access Philips' Ultrasound System software at a sufficient level to perform the services it markets and sells, Summit uses a hacking tool called Adepto to illegally access Philips' proprietary software by bypassing Philips' access controls.  Adepto allows Summit to gain unauthorized access to Philips' copyright-protected software tools and Philips' copyright-protected log files.  Upon information and belief, Summit hacks into Philips' proprietary services in additional ways as well.

39.     Summit's CEO and CTO Nguyen designed and/or developed and/or directed the development of the Adepto hacking tool personally. Upon information and belief, in order

COMPLAINT - 9
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

to make use of the Adepto hacking tool Summit and Summit customers physically remove the hard drive from the Ultrasound System; the removed hard drive is then attached to a separate computer where the Adepto hacking tool runs; the Adepto hacking tool bypasses Philips software access controls and accesses the removed hard. Upon information and belief, the Adepto hacking tool makes and/or installs copies of Philips software that contain enabled unlicensed options within Philips software. These enabled unlicensed options force compatibility that would not otherwise be accessible on the removed hard drive and the Ultrasound System from which it was removed.  For example, the Adepto tool enables options on the removed hard drive in order to access and operate software to enable use of a Philips transducer that, but for the unauthorized modifications Summit makes using the Adepto tool, would not be accessible on that specific Ultrasound System.

40.     Upon information and belief, Summit also makes use of its Adepto hacking tool and/or other hacking tools in order to enable unlicensed optional Philips software on Philips' Ultrasound Systems used by Summit in its part repair and parts refurbishing business.

41.     Summit is not authorized to distribute modified Philips Ultrasound Systems, and Summit does not and never has held a license to make modifications to Philips Ultrasound Systems or the software that drives them.

42.     Summit is not only making unauthorized changes to the Ultrasound Systems, Summit is knowingly and intentionally selling services that it advertises are legal, but in fact rely on Summit's unlawful hacking techniques and hacking tools.  Upon information and belief, when a customer purchases services from Summit, Summit provides copies of and training on the use of its Adepto hacking tool.  Summit's services thereafter then rely on Summit's ability, or Summit's customers' ability, to use the Adepto tool to repeatedly hack into and circumvent Philips' access controls in order to gain unlicensed access to Philips' copyright-protected material, including service and diagnostic tool and log files.

43.     In short, Summit is making a profit at the expense of Philips by offering consumers the ability to make unlicensed use of Philips software, by hacking Philips software

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

to enable unlicensed features that consumers would otherwise have to purchase separately from Philips, and/or with configurations that consumers could never obtain from Philips. Summit then sells these services in direct competition with Philips, at a discount, and is therefore making these unauthorized changes for commercial gain.

### ~ Summit Marketing Falsely Advertises That Their Unlawful Practices are Legal ~

44.     Upon information and belief, consumers who purchase Summit's unlawful services believe that Summit's services are lawful, because Summit expressly represents that they are the "only legal alternative to OEM" and that its hacking tool is a legal solution to access OEM systems, like Philips' Ultrasound Systems, that are protected by copyright.

45.     OEM systems are original equipment manufacturer systems, and providers of those systems – like Philips – are OEMs.

46.     Summit falsely advertises to the public that Summit's hacking is a legal solution to the "Current issue in the market" that OEM systems are protected by copyright.



47.     Summit's online webinar discussing its Adepto hacking tool confirms that Summit understands that Philips software is protected by copyright.  Summit's instructor explains that Summit developed its hacking tool Adepto, because "legal precedent has been set

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    for these passcodes that lock down those service tools with copyright, intellectual and licensing

2    issues that surround them." Thus, Summit's own training material shows that Summit is aware

3    that Philips' software is protected by both access controls and by copyright law.

4        48.    Thus, Summit frames its scheme as addressing the "issue[] in the market" that

5    OEM service providers – like Philips – actively protect their copyright-protected tools and

6    software with access controls.  And Summit's answer to this "issue[] in the market" is its

7    Adepto hacking tool, which circumvents Philips access controls in order to gain unlawful

8    access to and make unlawful copies of Philips' proprietary software.

9        49.    In the marketing and training materials Summit uses to advertise their service

10    contracts and repair/refurbishment businesses, Summit unabashedly states that Summit created

11    Adepto to give customers the tools to service their medical imaging devices, as an "Alternative

12    to OEM diagnostics." Summit further describes this tool as the "legal solution for customers

13    aware of issues around licensing, copyright and intellectual property," explaining that "it's

14    ethical, it removes any liabilities that can be passed on by an independent service provider or

15    … passing on service code liability."



26        50.    Summit informs its customers that the machine owner (*i.e.* the healthcare

27    provider) will be primarily liable for the behavior of outsourced service providers.

COMPLAINT - 12
No. 2:19-cv-01745

Specifically, Nguyen tells its customers that they, as owners of Philips medical imaging systems, will be primarily liable, and that the only legal alternative to relying on an OEM manufacturer is to make use of Summit's Adepto tool.



51.     Summit further informs its customers that the tools used by independent service organizations (ISOs) to access diagnostic service tools, necessary to install drivers or flash particular boards, are often passcodes that "infring[e] upon copyright, licensing, and intellectual property" which is "all owned by the OEMs that built the software," and "the healthcare facility is liable," because OEM, like Philips, track use of their software through device service menus. Summit explains that healthcare providers, as the equipment owners, will be identified and liable when OEMs detect unlawful use of their software.

52.     Summit, and specifically Summit's CEO personally, then further markets their Adepto hacking tool as a tool that allows Summit to lawfully provide services as an ISO without infringing Philips' (an OEM) copyright.

53.     Summit's marketing, however, is false. Summit's statements that its services and the Adepto tool are legal cannot be squared with their admission that the Philips' software within Philips medical image devices is proprietary and copyright-protected, and that the Adepto hacking tool hacks into Philips' proprietary and copyright-protected software to

COMPLAINT - 13
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

circumvent access controls and access Philips' copyright-protected files, to physically alter Philips medical imaging devices, and to modify access controls within Philips devices.

54.     Specifically, Adepto hacks into Philips Ultrasound Systems by circumventing Philips' access controls, entirely bypassing Philips' Ultrasound user interface, and thereby obtains direct access to Philips' copyright-protected software files in a manner that eludes detection and leaves no traces within Philips system logs.

55.     Upon information and belief, in order to convince the public that Adepto is legal, Summit markets Adepto as a tool that accesses only the Windows OS and not the Ultrasound Systems software installed on the same hard drive.  This is false.  Adepto operates directly on a hard drive that Summit physically removes from Philips Ultrasound Systems.

56.     In Summit's advertising video, CEO Nguyen falsely advertises that Adepto "works within the Windows OS and this [the Philips Ultrasound System hard drive] is simply a slaved hard drive", and that Summit is merely a "Windows developer developing software that runs on the Windows' operating system", and is therefore only operating within the Windows OS on these hard drives. But, as with any software that executes on a Windows OS, Philips' copyright-protected files and software containing Philips trade secrets are stored within the Windows OS file structure. Adepto is configured to unlawfully circumvent Philips access controls that protect and control access to both the Windows OS within the Philips Ultrasound System and the Philips Ultrasound Software in order modify Philips' software within that file structure.

//

//

//

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500



57.     In Summit's marketing video, in reference to the figure above, Nguyen explains that copyright, IP, and licensing issues only affect the "light blue box" above (*i.e.* the "Ultrasound System Software"), and Adepto does not touch the light blue box. But this is a distinction without a difference because Philips' copyright-protected files and the software containing Philips' trade secrets are stored within the Windows OS file structure. Adepto is specifically configured to modify Philips' software within that file structure. Furthermore, access to the Windows OS on Philips Ultrasound Systems is also controlled by Philips access controls, which Adepto circumvents in order to gain access to both the Windows OS and Philips software within a Philips Ultrasound System hard drive.

58.     Summit's video goes on to explain what Adepto is used for and how it is used through a demonstration that involves circumventing Philips access controls to gain access to and make copies of Philips' copyright-protected files.

59.     Summit, and specifically Summit's CEO Nguyen personally, explains that it makes its Adepto hacking tool available free to its customers that return on a repeat basis.

60.     Upon information and belief, if an individual requests a copy of Summit and Nguyen's Adepto hacking tool, such an individual is directed to Nguyen who personally

COMPLAINT - 15
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

interviews persons who request a copy of the Adepto hacking tool, and upon information and belief Nguyen personally controls and oversees distribution of the Adepto hacking tool to Summit's customers.

**~ Summit's Parts Repair and Refurbishment Business Relies on Hacking Philips Access Controls to Gain Access to and Make Use of Philips Proprietary Software ~**

61.     Upon information and belief, Summit hacks Philips medical imaging devices in order to enable unlicensed system options within Philips medical imaging devices.

62.     For example, Summit operates a business selling ultrasound system parts, including parts for Philips Ultrasound Systems. This business includes a business of repairing ultrasound transducers.  In order to complete a repair, Summit tests a repaired transducer by using a Philips Ultrasound System to verify the repaired part.

63.     Philips sells a variety of Ultrasound System transducers, each designed for a particular purpose, and many require specifically licensed software to work on the Philips Ultrasound System to which a transducer is attached.  Thus, many Philips Ultrasound Systems are unable to make use of a variety of Philips transducers, because corresponding optional software is not enabled on the particular Ultrasound System being used.  If such software is not enabled, the system's imaging software will be unavailable and the system will report that the transducer is incompatible.

64.     Rather than purchase licenses for the optional software from Philips, Summit uses the hacking techniques described above, including Adepto, to enable unlicensed optional software within Philips Ultrasound Systems to test and verify parts repaired or refurbished by Summit.

65.     Thus, to conduct its business, which necessarily requires that Summit illegally enable unlicensed options on an Ultrasound System, Summit circumvents multiple layers of Philips' access controls.

66.     Upon information and belief, when Summit cannot test a particular transducer (because it does not have sufficiently enabled options to do so), Summit hacks through multiple

COMPLAINT - 16
No. 2:19-cv-01745

layers of Philips' access controls to modify Philips' software files and to enable unlicensed options required to test that transducer.

67.     Upon information and belief, Summit is in possession of Philips internal tools for enabling options within Philips medical imaging devices, including at least Philips Ultrasound Systems. Such tools are proprietary to Philips, contain Philips trade secrets, have never been distributed outside of Philips, and contain highly confidential trade secrets.

68.     Upon information and belief, Summit circumvents Philips' access controls, to gain access to Philips' medical imaging system onboard tools for updating, modifying, or adding Philips software options—tools that only Philips authorized personnel are able to access using either Philips generated key codes or Philips authorized access control dongles in order to comply with Philips access controls.

69.     Thus, in order to enable unlicensed options to support Summit's repair parts business, Summit hacks Philips access controls to gain access to Philips onboard tools or software functionality that modifies or enables options, and then Summit employs Philips' internal trade secret and proprietary software, or other hacking tools, to modify machine specific configuration files within Philips' systems that enable unlicensed options and allow unlicensed access to aspects of Philips software. Once a system has been hacked and modified by Summit, Philips' software corresponding to the respective option is permanently accessible by Summit, or its customers, and any other user of that machine.

## FIRST CAUSE OF ACTION

### Circumventing a Technological Measure – 17 U.S.C. § 1201

### (All Plaintiffs Against All Defendants)

70.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this First Cause of Action.

71.     Philips medical imaging systems include Philips' copyrighted and proprietary software, which also include Philips' trade secrets.

72.     The clinical software and diagnostic and service tools software in Philips'

COMPLAINT - 17
No. 2:19-cv-01745

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Ultrasound Systems are protected by copyright under Title 17, and include without limitation Philips service tools for updating or modifying the licensed options available on a machine, and for modifying identification numbers associated with a machine.

73.     The log file output and user displays of Philips Ultrasound Systems are also respectively protected by copyright under Title 17 as non-literal elements of Philips software installed on and executing on Philips Ultrasound Systems.

74.     Philips Ultrasound System licensed optional software is also protected by copyright under Title 17.

75.     Philips employs numerous access controls in order to protect and control access to and restrict use of its copyrighted proprietary software and/or portions thereof.

76.     Philips' access controls include technological measures to protect and control access to and limit use of their copyrighted proprietary software and/or portions thereof.

77.     Summit knowingly and intentionally circumvents Philips' access controls, using either Summit's Adepto hacking tool, or other unlawful means, or other unlawfully obtained means, or a combination of the Adepto hacking tool with such other means.  Summit hacks Philips' access controls in order to gain access to Philips' medical imaging system onboard tools for updating, modifying, or adding Philips software options—tools that only Philips authorized personnel are able to access using either Philips generated key codes or Philips authorized access control dongles in order to comply with Philips access controls.

78.     Summit has hacked and continues to intentionally hack one or more of Philips' technological measures to knowingly and intentionally circumvent these access controls to gain unauthorized access to Philips' protected software works, which include Philips trade secrets, and to enable features of these software works which Philips has not licensed or authorized Summit, or its customers, to make use of.  Through these unlawful means, Summit unlawfully gains access to unlicensed Philips software and provides unauthorized access to all subsequent users of Philips' machines hacked by Summit.

79.     Summit, furthermore, has hacked and continues to knowingly and

intentionally hack one or more of Philips' technological measures to circumvent these access controls to gain unauthorized access to a variety of copyrighted works. Summit does this to circumvent Philips controls that limit access to Philips' copyright-protected software works in order to enable optional features of these software works which Philips has not licensed or authorized Summit, or its customers, to make use of. Philips has the right to employ technological measures to protect, and control access to, Philips copyright-protected works within Philips Ultrasound Systems, the operating system within which Philips copyright-protected works are executed, and the files stored within the operating systems' file structure.

80.     Upon information and belief, Summit knowingly and intentionally employs these hacked machines providing unlicensed access to Philips copyright-protected software and files to Summit's employees in order to provide a parts repair business, and Summit hacks the Philips machines of Summit's customers in furtherance of both its parts repair business and its service contract business.

81.     Summit further provides training to Summit's customers that include instructions about how to circumvent Philips' access controls with Summit's hacking tools and techniques.

82.     Summit's intentional and knowing circumvention of the technological measures Philips uses to effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1) of the Digital Millennium Copyright Act.

83.     Summit's techniques, including its Adepto hacking tool, are, or at least include, devices, products, components, or parts thereof that are primarily designed or produced for the purpose of circumventing Philips' access controls that protect Philips software to provide Summit and Summit's customers constant access to Philips' proprietary software. Thus, Summit is in the business of knowingly marketing, manufacturing, offering to the public, and/or trafficking in a product, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing Philips' access controls that protect and control access to Philips software.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

84.     Upon information and belief, in order to carry out Summit's unlawful circumvention of Philips' access controls, Summit makes use of tools which have no use but to circumvent access controls.

85.     Summit has intentionally and/or knowingly manufactured, offered to the public, or otherwise trafficked in technologies, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing protection afforded by Philips' access controls and/or which have limited commercially significant purpose other than to circumvent Philips' access controls in violation of the DMCA, 17 U.S.C. § 1201(a)(2). Upon information and belief obtained from publicly available sources, Nguyen is a principal owner, Governor, Chief Executive Officer (CEO), and Chief Technology Officer (CTO) of Summit.

86.     In his role, Nguyen oversees and has the right and ability to supervise Summit's actions addressed in this complaint, including Summit's use of the Adepto hacking tool, and upon information and belief one or more other hacking tools, in order to circumvent Philips access controls that are technological measures that effectively control access to works protected under Title 17, including Philips proprietary software and logs on at least Philips medical imaging systems, including Philips Ultrasound Systems.

87.     Nguyen publicly, personally, promotes use of Summit's hacking tools in Summit's marketing material.

88.     Nguyen personally controls and oversees the process of selecting to whom Summit employees distribute the Adepto hacking tool.

89.     Upon information and belief, Nguyen personally advertises its Adepto hacking tool as available for distribution to Summit's customers, but Summit only distributes its Adepto hacking tool to contracted customers after such customers have been personally interviewed by Nguyen himself.

90.     Upon information and belief obtained from publicly available sources, Nguyen designed and created Summit's Adepto hacking tool and participated in or directed its

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

development.

91.     As a principal owner, Governor, CEO and CTO, Nguyen has, has had, and continues to have an obvious and direct financial interest in Summit's circumvention technology.

92.     Nguyen has, has had, and continues to have the right and ability to supervise the work of Summit's employees.

93.     Because Nguyen had the right and ability to supervise the circumvention actions of Summit, and because Nguyen benefitted financially from Summit's circumvention actions, Nguyen is vicariously liable for Summit's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

94.     In addition, or in the alternative, as an officer of Summit who personally participated in the Summit's tortious activities, Nguyen is liable for Summit's torts.

95.     Specifically, as both the CEO and CTO, Nguyen oversaw and directly participated in Summit's acts of circumvention of access controls to gain access to copyrighted material that includes Philips' trade secrets.

96.     Nguyen was aware of, participated in the use of, created and/or directly developed, Summit's Adepto hacking tool, and oversees, directs, participates, promotes, and participates in the use and distribution of Summit's Adepto hacking tool in order to allow Summit to circumvent Philips' technological measures protecting Philips copyright and thereby enable unlicensed software within Philips Ultrasound Systems and access and create copies of Philips copyright-protected log files, and in order to allow Summit's customers to do the same.

97.     Nguyen has also personally trained Summit's employees and Summit's customers in how to make use of the Adepto hacking tool in order to disable or otherwise circumvent Philips access controls and create copies of Philips copyrighted software and log files.

98.     Philips has been and will continue to be damaged by the conduct of Summit and Nguyen conduct in an amount not presently known with certainty, but that will be proven

COMPLAINT - 21
No. 2:19-cv-01745

at trial.

99.     Philips is entitled to the range of relief provided by 17 U.S.C. § 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, and Philips' costs and attorneys' fees in amounts to be proven at trial. Defendants' conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Modifying Copyright Management Information – 17 U.S.C. § 1202

### (All Plaintiffs Against All Defendants)

100.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Second Cause of Action.

101.     Philips proprietary software is protected by copyright laws, and Philips owns the copyright in its protected software.

102.     Philips proprietary software includes access controls that are accessed and read by Philips' automated copyright license management software within Philips Ultrasound Systems, which is a standard component of Philips' proprietary software included in each Philips Ultrasound System.

103.     Philips authorizes specific machines to execute only specific licensed optional software, and the specific software is only available on that specific machine consistent with the hardware and software features the customer purchases for that specific machine.

104.     When a Philips Ultrasound System boots up, a Philips access control allows the system to load only the licensed optional software based on machine specific configurations accessed by Philips access controls.  This automated system allows Philips to exclude unlicensed use of optional software and thus automatically enforces the terms and conditions under which Philips makes its software available on a Philips Ultrasound System.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

105.     Philips' machine specific configuration files for controlling access only to licensed optional software include copyright management information under 17 U.S.C. 1202(c), including the terms and conditions of the use of the software residing thereon in machine readable configuration files.

106.     Summit's business of modifying Philips Ultrasound Systems includes modifications to such copyright management information and is intended to allow users to make unauthorized access to unlicensed portions of Philips protected software.

107.     Upon information and belief, Summit's customers are unaware that Summit has modified Philips' copyright management information, because Summit intentionally conceals this behavior from its customers.

108.     Upon information and belief, Summit's servicing of Ultrasound Systems includes providing or distributing modified machine specific configuration files.

109.     Summit's business of modified copyright management information is done intentionally and for the purpose of distributing falsified copyright management information knowing that the copyright management information has been altered.  And Summit knows, has reasonable grounds to know, or intends that its behavior facilitates, enables, or induces Summit's customers to infringe Philips rights under Title 17.

110.     Philips has not authorized Summit to modify or provide such falsified copyright management information, nor has Philips authorized the modification of any copyright management information or the unlicensed use of Philips' proprietary optional software.

111.     Summit knowingly and with the intent to induce, enable, facilitate, or conceal infringement by its customers provides, and has provided, falsified copyright management information and/or distributing falsified copyright management information in violation of 17 U.S.C. § 1202(a).

112.     Summit's intentional alteration of Philips' copyright management information and subsequent distribution of modified configuration files for accessing

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

unlicensed portions of Philips' proprietary software is done with the knowledge that such behavior induces, enables, facilitates, or conceals infringement of Philips' copyright in its proprietary software in violation of 17 U.S.C. § 1202(b).

113.    Upon information and belief obtained from publicly available sources, Nguyen is a principal owner, Governor, Chief Executive Officer (CEO), and Chief Technology Officer (CTO) of Summit.

114.    In his role, Nguyen oversees and has the right and ability to supervise, Summit's actions addressed in this complaint, including Summit's use of the Adepto hacking tool, and upon information and belief one or more other hacking tools, in order to circumvent Philips access controls that are technological measures that effectively control access to works protected under Title 17, including Philips proprietary software and logs on at least Philips medical imaging systems, including Philips Ultrasound Systems.

115.    Nguyen publicly, personally, promotes use of Summit's hacking tools in Summit's marketing material.

116.    Nguyen personally controls and oversees the process of selecting to whom Summit employees distribute the Adepto hacking tool.

117.    Upon information and belief, Nguyen personally advertises its Adepto hacking tool as available for distribution to Summit's customers, but Summit only distributes its Adepto hacking tool to contracted customers after such customers have been personally interviewed by Nguyen himself.

118.    Upon information and belief obtained from publicly available sources, Nguyen designed and created Summit's Adepto hacking tool and participated in or directed its development.

119.    As a principal owner, Governor, CEO and CTO, Nguyen has, has had, and continues to have an obvious and direct financial interest in Summit's circumvention technology.

120.    Nguyen has, has had, and continues to have the right and ability to supervise

the work of Summit's employees.

121.     Because Nguyen had the right and ability to supervise the circumvention actions of Summit, and because Nguyen benefitted financially from Summit's circumvention actions, Nguyen is vicariously liable for Summit's violations of 17 U.S.C. §§ 1201 and 1202 as set forth in this Complaint.

122.     In addition, or in the alternative, as an officer of Summit, Nguyen is liable for Summit's torts.

123.     Specifically, as both the CEO and CTO, Nguyen oversaw and directly participated in Summit's acts of circumvention of access controls to gain access to copyrighted material that includes Philips' trade secrets.

124.     Nguyen was aware of, participated in the use of, created and/or directly developed, Summit's Adepto hacking tool, and oversees, directs, participates, promotes, and participates in the use and distribution of Summit's Adepto hacking tool in order to allow Summit to circumvent Philips' technological measures protecting Philips copyright and thereby enable unlicensed software within Philips Ultrasound Systems and access and create copies of Philips copyright-protected log files, and in order to allow Summit's customers to do the same.

125.     Nguyen has also personally trained Summit's employees and Summit's customers in how to make use of the Adepto hacking tool in order to disable or otherwise circumvent Philips access controls and create copies of Philips copyrighted software and log files.

126.     Philips has been and will continue to be damaged by the conduct of Summit and Nguyen conduct in an amount not presently known with certainty, but that will be proven at trial.

127.     Philips is entitled to the range of relief provided by 17 U.S.C. 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, and Philips' costs and attorneys' fees in amounts to be proven at trial.  Summit's conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## THIRD CAUSE OF ACTION

## Trade Secret Misappropriation – 18 U.S.C. § 1836

### (All Plaintiffs Against All Defendants)

128.    Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Third Cause of Action.

129.    Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips Ultrasound Systems.

130.    Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

131.    Philips' proprietary software and access control systems, including onboard software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, machine specific access control files, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

132.    Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by Summit or other competitors of Philips.

133.    Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

134.    Upon information and belief, Summit has obtained Philips internal trade secret software tools for enabling optional software on Philips Ultrasound systems; these tools are restricted within Philips even as to Philips own engineers and developers, and have never been distributed outside of Philips.

135.    Upon information and belief, Summit possesses and is making use of Philips' trade secret tools for managing its access controls and Summit obtained these tools for enabling software options by improper means, or from someone having an obligation to maintain the secrecy of these tools in violation of the obligation.

136.    Philips optionally enabled software which implements and enables licensable features and tools comprises Philips trade secrets, which Philips only authorizes execution of within specific licensed machines. These trade secrets reside on Philips Ultrasound Systems in compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having an appropriate licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

137.    Summit unlawfully accesses and enables access to Philips' trade secrets for the purpose of furthering its parts repair business or its repair and maintenance service business in all cases for a profit.

138.    Summit has misappropriated some or all of these trade secrets for its own unlawful use and/or benefit without express or implied consent by Philips.  At the time of its use of such trade secrets, Summit knew or had reason to know that its knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

139.     Summit's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

140.     As a result of Summit's misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial. At a minimum, Summit has gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

141.     Summit's ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Summit.

142.     Upon information and belief, Nguyen personally oversees and approves the use of Philips trade secrets. Specifically, Nguyen designed and created Summit's Adepto tool for the purpose of circumventing access controls, and Nguyen has instructed his company, Summit, to make use of Summit's Adepto hacking tool in connection with Philips trade secrets in order to modify Philips systems' access controls to enable Philips' licensable features.  Thus, under Nguyen's direction Summit and Summit's customers thereby gain access and making use of Philips trade secrets via improper means of hacking Philips' access controls. And Nguyen is personally involved in making false statements in Summit's marketing of the Adepto hacking tool as a tool for misappropriating Philips trade secrets.

143.     Thus, Nguyen is personally and individually liable for the activities of Summit and Summit's employees which he personally formulates, ratifies, directs, controls, and participates in.

144.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

COMPLAINT - 28
No. 2:19-cv-01745

145.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Summit has violated the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.

**FOURTH CAUSE OF ACTION**

**Trade Secret Misappropriation – RCW 19.108,** *et. seq.*

**(All Plaintiffs Against All Defendants)**

146.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Fourth Cause of Action.

147.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips Ultrasound Systems.

148.     Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use, in interstate or foreign commerce.

149.     Philips' proprietary software and access control systems, including its diagnostic and service software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, temporal limitations on distributed electronic material and access credentials, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

150.     Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by Summit or other competitors of Philips.

151.     Philips' proprietary software and access control systems derive independent

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

152.    Upon information and belief, Summit has obtained Philips internal trade secret software tools for enabling optional software on Philips Ultrasound systems; these tools are restricted within Philips even as to Philips own engineers and developers, and have never been distributed outside of Philips.

153.    Upon information and belief, Summit possesses and is making use of Philips' trade secret tools for managing its access controls and Summit obtained these tools for enabling software options by improper means, or from someone having an obligation to maintain the secrecy of these tools in violation of the obligation.

154.    Philips optionally enabled software which implements and enables licensable features and tools comprises Philips trade secrets, which Philips only authorizes execution of within specific licensed machines. These trade secrets reside on Philips Ultrasound Systems in compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having an appropriate licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

155.    Summit unlawfully accesses and enables access to Philips' trade secrets for the purpose of furthering its parts repair business or its repair and maintenance service business in all cases for a profit.

156.    Summit has misappropriated some or all of these trade secrets for its own unlawful use and/or benefit without express or implied consent by Philips.  At the time of its

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

use of such trade secrets, Summit knew or had reason to know that its knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

157.    Summit's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights. Summit's misappropriation of Philips' trade secrets by hacking into Philips' restricted systems and Philips' medical imaging systems demonstrates Summit's behavior is willful and rises to the level of maliciousness appropriate for exemplary and punitive damages.

158.    As a result of Summit's misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial. At a minimum, Summit has gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

159.    Summit's ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Summit.

160.    Upon information and belief, Nguyen personally oversees and approves the use of Philips trade secrets. Specifically, Nguyen designed and created Summit's Adepto tool for the purpose of circumventing access controls, and Nguyen has instructed his company, Summit, to make use of Summit's Adepto hacking tool in connection with Philips trade secrets in order to modify Philips systems' access controls to enable Philips' licensable features.  Thus, under Nguyen's direction Summit and Summit's customers thereby gain access and making use of Philips trade secrets via improper means of hacking Philips' access controls. And Nguyen is personally involved in making false statements in Summit's marketing of the Adepto hacking tool as a tool for misappropriating Philips trade secrets.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

161.     Thus, Nguyen is personally and individually liable for the activities of Summit and Summit's employees which he personally formulates, ratifies, directs, controls, and participates in.

162.     Philips has been damaged by all of the foregoing and Summit's and Nguyen's willful and wanton conduct demonstrate that Philips is entitled to an award of exemplary damages and attorneys' fees.

163.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Summit has unlawfully misappropriated Philips' trade secrets and violated Washington's Uniform Trade Secret Act, RCW 19.108, *et. seq.*

## FIFTH CAUSE OF ACTION

### False Advertising – 15 U.S.C. § 1125(a)

### (All Plaintiffs Against All Defendants)

164.     Philips restates and re-alleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Fifth Cause of Action.

165.     As set forth above, Summit makes false and misleading statements regarding the quality and nature of Summit's business and services. Specifically, Summit advertises that its services, relying upon its Adepto hacking tool, are a legal alternative Philips OEM services that address the market issue that Philips protects its proprietary software and trade secrets with access controls.  Summit warns healthcare providers that other independent service organization rely on falsely generated keys or codes to perform services by infringing OEM rights in OEM service tools. Summit further markets that it is able to modify Philips Ultrasound System software without accessing or touching Philips Ultrasound Software, and that Summit's Adepto hacking tool only accesses Windows portions of a Philips Ultrasound Software system. Summit explains that this method of circumventing Philips access controls is legal, and avoids liability to healthcare providers arising from unlawful services.

166.     Summit's marketing is false and misleading, because it is untrue; Summit's techniques are unlawful as described throughout this complaint. Specifically, Summit's

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

techniques violate the DMCA's prohibition on circumventing access controls that effectively control access to a protected work, because Philips access controls effectively control access to Philips proprietary optional software, to access to Philips software for enabling Philips optional software, and access to Microsoft's Windows operating systems within Philips' Ultrasound Systems.

167.    Defendants' false and misleading representations of fact in its commercial advertising misrepresent the nature, characteristics, qualities, and origin of Summit's services, and falsely represent that Summit's services are a legal mechanism for circumventing Philips access controls within its medical imaging devices, including Ultrasound Systems.

168.    Such conduct by Summit constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

169.    Defendants' knowledge that their Adepto hacking tool and reliance on Philips tools for enabling Philips software options all work to circumvent access controls meant to protect Philips copyright-protected works and Philips trade secrets evidences an intent to cause consumer confusion and to defraud the public, and renders this case exceptional under 15 U.S.C. § 1117.

170.    Upon information and belief, Nguyen personally oversees and approves the use of Summit's false advertising. Specifically, Nguyen has been personally involved in making false statements on behalf of Summit in Summit's marketing of the Adepto hacking tool to Summit's customers as the only legal alternative to relying on Philips, as OEM, for support of Summit's customers' systems.

171.    Thus, Nguyen is personally and individually liable for the false advertising activities of Summit and Summit's employees which he personally formulates, ratifies, directs, controls, and participates in.

172.    As a direct and proximate result of Defendants' false advertising in violation of under 15 U.S.C. § 1125(a), Plaintiffs have suffered, and will continue to suffer, substantial damage and irreparable harm constituting injury for which they have no adequate remedy at

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   law.  Unless restrained and enjoined by this Court, the wrongful acts of Summit will continue

2   to cause serious irreparable injury and damage to Philips.

### SIXTH CAUSE OF ACTION

### Unfair Competition in Violation of Washington's

### Consumer Protection Act - RCW 19.86.020, *et seq.*

#### (All Plaintiffs Against All Defendants)

7        173.        Philips restates and re-alleges all of the allegations of all the paragraphs in

8   this complaint as though fully set forth herein this Sixth Cause of Action.

9        174.        As set forth above, Summit makes false and misleading statements regarding

10  the quality and nature of Summit's business and services. Specifically, Summit advertises that

11  its services, relying upon its Adepto hacking tool, are a legal alternative Philips OEM services

12  that address the market issue that Philips protects its proprietary software and trade secrets with

13  access controls.  Summit warns healthcare providers that other independent service

14  organization rely on falsely generated keys or codes to perform services by infringing OEM

15  rights in OEM service tools. Summit further markets that it is able to modify Philips Ultrasound

16  System software without accessing or touching Philips Ultrasound Software, and that Summit's

17  Adepto hacking tool only accesses Windows portions of a Philips Ultrasound Software system.

18  Summit explains that this method of circumventing Philips access controls is legal, and avoids

19  liability to healthcare providers arising from unlawful services.

20       175.        Summit's marketing is false and misleading, because it is untrue; Summit's

21  techniques are unlawful as described throughout this complaint. Specifically, Summit's

22  techniques violate at least the DMCA's prohibition on circumventing access controls that

23  effectively control access to a protected work, because Philips access controls effectively

24  control access to Philips proprietary optional software, to access to Philips software for

25  enabling Philips optional software, and access to Microsoft's Windows operating systems

26  within Philips' Ultrasound Systems.

27       176.        Defendants' false and misleading representations of fact in its commercial

COMPLAINT - 34
No. 2:19-cv-01745

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

advertising misrepresent the nature, characteristics, qualities, and origin of Summit's services, and falsely represent that Summit's services are a legal mechanism for circumventing Philips access controls within its medical imaging devices, including Ultrasound Systems.

177.     Such conduct by Summit is an unfair method of trade in violation of Washington's' Consumer Protection Act, RCW 19.86.020.

178.     Defendants' knowledge that their Adepto hacking tool and reliance on Philips tools for enabling Philips software options all work to circumvent access controls meant to protect Philips copyright-protected works and Philips trade secrets evidences an intent to cause consumer confusion and to defraud the public, and therefore justify imposition by this Court an award including treble damages and reasonable attorney's fees as provided by RCW 19.86.090.

179.     Upon information and belief, Nguyen personally oversees and approves the use of Summit's false advertising. Specifically, Nguyen has been personally involved in making false statements on behalf of Summit in Summit's marketing of the Adepto hacking tool to Summit's customers as the only legal alternative to relying on Philips, as OEM, for support of Summit's customers' systems.

180.     Thus, Nguyen is personally and individually liable for the false advertising activities of Summit and Summit's employees which he personally formulates, ratifies, directs, controls, and participates in.

181.     As a direct and proximate result of Defendants' unfair methods of competition and deceptive acts, Plaintiffs have suffered, and will continue to suffer, substantial damage and irreparable harm constituting injury for which they have no adequate remedy at law.  Unless restrained and enjoined by this Court, the wrongful acts of Summit will continue to cause serious irreparable injury and damage to Philips.

## **JURY DEMAND**

Pursuant to Fed.R.Civ. P. 38 and LCR 38, Plaintiffs hereby demand a trial by jury for all issues so triable.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court enter judgment in their favor and against Defendant as follows:

1.    Judgment be entered that

      a.    Defendants have committed acts of unfair competition including false designation or origin and false advertising in violation of 15 U.S.C. § 1125(a);

      b.    Defendants have committed actions of circumventing a technological measure that effectively controls access to Philips' works protected under Title 17 in violation of the DMCA, 17 U.S.C. § 1201(a)(1);

      c.    Defendants have committed actions of trafficking in a technology, device, product, service, component, or part thereof in violation of the DMCA, 17 U.S.C. § 1201(a)(2);

      d.    Defendants have falsified and provided or distributed falsified copyright management information in violation of the DMCA, 17 U.S.C. § 1202;

      e.    Defendants have committed acts of trade secret misappropriation in violation of the DTSA, 18 U.S.C. § 1836;

      f.    Defendants have violated the Washington Uniform Trade Secret Act in violation of RCW 19.108, *et. seq.*;

      g.    Defendants have engaged in unlawful, unfair and deceptive business practices in violation of Washington's Consumer Protection Act, RCW 19.86.020, *et. seq*;

2.    Judgment be entered permanently enjoining Defendants and each of their officers, members, employees, owners managers, agents, attorneys, successors, servants, subsidiaries, related entities, licensees, and assigns, and all persons acting in concert with any of the foregoing, from:

      a.    selling, offering for sale, advertising, or promoting any goods or services

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1        in violation of the Lanham Act § 1125 or RCW 19.86.020;

2        b.    circumventing any Philips access control;

3        c.    using, possessing, or distributing any Philips proprietary material or

4        trade secrets; and

5        d.    modifying any Philips copyright management information.

6        3.    Order an accounting of all Philips trade secrets or proprietary material in

7 Defendants' possession and that all such trade secret or proprietary material be returned to

8 Philips;

9        4.    Defendants be held liable and ordered to account for and pay to Plaintiffs,

10        a.    treble actual damages or Defendants' profits pursuant to 15 U.S.C. §

11        1117(a) based on Defendants' willful false and misleading advertising;

12        b.    all gains, benefits, and advantages derived from Defendants' wrongful

13        use, misappropriation, and infringement of Plaintiffs' trade secrets;

14        c.    all losses and damages, including lost profits and costs for corrective

15        advertising, suffered by the Philips as a result of Defendants' unfair

16        competitive practices;

17        d.    award monetary damages to Philips, including but not limited to

18        compensatory damages and statutory, enhanced, treble and punitive

19        damages, to the extent recoverable by any applicable law;

20        e.    Philips' reasonable attorneys' fees and costs pursuant to 15 U.S.C. §

21        1117(a), RCW 19.86.090, RCW 19.108.040;

22        f.    treble damages pursuant to RCW 19.86.090;

23        g.    exemplary damages pursuant to RCW 19.108.030;

24        h.    exemplary and punitive damages for Defendants' willful, wanton and

25        reckless conduct; and

26        i.    Judgment granting Plaintiffs damages and such other relief as this Court

27        deems just and proper.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  DATED:  October 29, 2019.

2                                SAVITT BRUCE & WILLEY LLP

3

4                                By   s/Stephen C. Willey
                                     _____
5                                    Stephen C. Willey, WSBA #24499
                                     1425 Fourth Avenue Suite 800
6                                    Seattle, Washington  98101-2272
                                     Telephone: 206.749.0500
7                                    Facsimile:  206.749.0600
                                     Email:  swilley@sbwLLP.com
8

9                                **REED SMITH LLP**
                                 Carla M. Wirtschafter (*pro hac vice* pending*)*
10                               1901 Avenue of the Stars, Suite 700
                                 Los Angeles, CA 90067
11                               Tel:  (310) 734-5200
                                 Fax:  (310) 734-5299
12                               Email:  cwirtschafter@reedsmith.com

13
                                 Kirsten R. Rydstrom (*pro hac vice* pending)
14                               Richard A. Graham (*pro hac vice* pending)
                                 Reed Smith Centre
15                               225 Fifth Ave
                                 Pittsburgh, PA 15222
16                               Telephone: (412) 288-3131
                                 Facsimile: (412) 288-3063
17                               Email: krydstrom@reedsmith.com
                                 Email: rgraham@reedsmith.com
18
                                 Gerard M. Donavan (*pro hac vice* pending)
19                               1301 K Street, N.W.
                                 Suite 1000, East Tower
20                               Washington, DC 20005-3317
                                 Telephone: (202) 414-9200
21                               Facsimile: (202) 414-9299
                                 Email: gdonovan@reedsmith.com
22
                                 *Attorney for Plaintiffs Koninklijke Philips N.V.*
23                               *and Philips North America LLC*

24

25

26

27

COMPLAINT - 38
No. 2:19-cv-01745