UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILIPS NORTH AMERICA, LLC, et al.,

                              Plaintiffs,

        v.

SUMMIT IMAGING INC., et al.,

                              Defendants.

CASE NO. C19-1745JLR

ORDER

## I.    INTRODUCTION

Before the court is Defendants Summit Imaging Inc. ("Summit") and Lawrence R. Nguyen (collectively, "Defendants") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.  (Mot. (Dkt. # 26); *see also* Reply (Dkt. # 29).)  Plaintiffs Philips North America LLC, Koninklijke Philips N.V., and Philips India Ltd. (collectively, "Philips") oppose the motion.  (Resp. (Dkt. # 28).)  The court has reviewed the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the

1 applicable law.  Being fully advised, the court GRANTS in part and DENIES in part

2 Defendants' motion to dismiss.[1]

## II.    BACKGROUND

4        Philips manufactures, sells, and services medical imaging systems—including

5 ultrasound systems, computed tomography scanners, positron emission tomography

6 scanners, X-ray machines, magnetic resonance scanners, and nuclear medicine

7 scanners—for hospitals and medical centers.  (*See* Am. Compl. (Dkt. # 23) ¶¶ 1, 21.)

8 The vast majority of the allegations in the complaint relate to Philips' ultrasound imaging

9 devices.  Philips sells and services ultrasound imaging devices under the "CX,"

10 "HD," "ClearVue," "Sparq," "VISIQ," "Xperius," "Affiniti," and "EPIQ" brand names

11 (collectively, the "Ultrasound Systems").  (*Id.* ¶ 23.)  In addition to the Ultrasound

12 Systems, Philips manufactures and sells related ultrasound hardware devices.  (*See id.*)

13 The Ultrasound Systems are driven by one of two software platforms that Philips

14 developed and owns:  (1) Philips Voyager Platform and (2) Philips Common Platform.

15 (*See id.* ¶¶ 26-27, 29.)

16        Each Ultrasound System Philips sells includes certain software and hardware

17 features that may only be used when Philips enables a particular licensable feature for the

18 specific Ultrasound System.  (*Id.* ¶ 33.)  For each Ultrasound System, Philips enables

19

20 _____

[1] Defendants requested oral argument on the motion (*see* Mot. at 1), but Philips did not
21 (*see* Resp. at 1).  The parties thoroughly briefed the issues, and the court finds that this matter
can be decided on the parties' papers.  Thus, the court DENIES Defendants' request for oral
argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court,
22 all motions will be decided by the court without oral argument.").

only the licensed features and tools that their customers purchased for that specific system, and only the specific authorized users of the machine can access the enabled features and software options. (*Id.*) Philips has registered the copyright in the software for the different Ultrasound Systems they sell (*see id.* ¶ 30, Ex. A), and allege that they "use[] multiple layers of technological controls to protect" their copyrighted works from unauthorized access (*see id.* ¶ 32). Philips alleges that their software and access control systems are trade secrets and that those systems contain other trade secret information. (*See, e.g.*, ¶ 134.)

Philips alleges that Summit hacks into Philips' software and alters the Ultrasound Systems using a program Summit developed called Adepto in order to enable features or options for which Philips' customers have not paid Philips. (*See id.* ¶¶ 4-6.) Philips claims that Summit trains its customers on how to circumvent Philips' access controls. (*See id.* ¶ 7.) Summit allegedly advertises that its Adepto tool is a "legal solution" or a "legal alternative" to working with Philips in order to enable additional features and options. (*See id.* ¶ 8.) Mr. Nguyen is the "principal owner, Governor, Chief Executive Officer, and Chief Technology Officer of Summit." (*Id.* ¶ 14.) Philips alleges that Mr. Nguyen designed, directed, and carried out Summit's hacking scheme. (*See, e.g.*, *id.* ¶¶ 39, 42, 53, 59, 62-63, 89-100.)

Philips brings seven causes of action against Defendants: (1) circumventing a technological measure in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (2) modifying copyright management information ("CMI") in violation of the DMCA, 17 U.S.C. § 1202; (3) trade secret misappropriation in violation of the

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (4) trade secret misappropriation in violation of the Washington Uniform Trade Secrets Act ("UTSA"), RCW ch. 19.108; (5) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (6) unfair competition in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.020 *et seq.*; and (7) copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101, 501.  (*See* Am. Compl. ¶¶ 73-218.)

### III.    ANALYSIS

Pursuant to Rule 12(b)(6), Defendants move to dismiss the following claims for failure to state a claim:  Philips' DMCA claims, DTSA claim, UTSA claim, false advertising claim, CPA claim, and any portion of their copyright infringement claim that alleges contributory copyright infringement.  (*See* Mot. at 5-24.)  The court sets forth the applicable legal standard before addressing Philips' causes of action in turn.

### A.    Legal Standard

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

**B.    Summit's Motion to Dismiss**

        1.     <u>Circumventing a Technological Measure</u>

Defendants argue that Philips' claim for circumventing a technological measure in violation of the DMCA, 17 U.S.C. § 1201 should be dismissed because Philips failed to "allege sufficient facts supporting that a technological measure that effectively controls access to a copyrighted work has been circumvented." (*See* Mot. at 13.) The Ninth Circuit explains that § 1201 of the DMCA sets forth "two distinct types of claims." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 944 (9th Cir. 2010); *see also* 17 U.S.C. § 1201. "First, § 1201(a) prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition." *Id.* Section 1201(a)(1)(A) contains a general prohibition against "circumventing a technological measure that effectively controls

access to a work protected under [the Copyright Act]," *see* 17 U.S.C. § 1201(a)(1)(A), while § 1201(a)(2) prohibits trafficking in technology that circumvents a technological measure that "effectively controls access" to a copyrighted work, *see* 17 U.S.C. § 1201(a)(2). "Second, and in contrast to § 1201(a), § 1201(b)(1) prohibits trafficking in technologies that circumvent technological measures that effectively protect 'a right of a copyright owner.'" *MDY Indus., LLC*, 629 F.3d at 944 (quoting 17 U.S.C. § 1201(b)(1)). In other words, § 1201(a) is focused on prohibiting "circumvention of technologies designed to prevent access to a work" while § 1201(b) "prohibits trafficking in devices that facilitate circumvention of measures that protect against copyright infringement." *See id.* at 944, 946 (citations omitted). Although Philips' response to Defendants' motion fails to explicitly state whether Philips' first cause of action alleges a § 1201(a) claim, a § 1201(b) claim, or both (*see, e.g.*, Resp. at 8 (concluding that "the [complaint] provides Defendants with sufficient notice of facts supporting Plaintiffs' DMCA Section 1201 claims" without detailing what subsection of § 1201 those claims are filed under)), the complaint appears to plead claims under both § 1201(a)(1) and (a)(2).[2] (*See* Am. Compl. ¶¶ 85, 88 (citing 17 U.S.C. § 1201(a)(1)-(2)).)

Philips has sufficiently pleaded that their Ultrasound Systems are protected by "a technological measure that effectively controls access to a work" under §§ 1201(a)(1) and (a)(2). Under § 1201(a), "a technological measure 'effectively controls access to a work'

_____

[2] Because Philips does not appear to be pursuing a claim under 17 U.S.C. § 1201(b), the court will not address Defendants' argument that Philips fails to state a claim under that provision.

1   if the measure, in the ordinary course of its operation, requires the application of

2   information, or a process or a treatment, with the authority of the copyright owner, to

3   gain access to the work." 17 U.S.C. § 1201(a)(3)(B). The complaint identifies "multiple

4   layers of technological controls" that Philips employs on their Ultrasound Systems "to

5   protect Philips' copyright-protected works from unauthorized access." (*See* Am. Compl.

6   ¶ 32.) Specifically, the complaint identifies the following technological measures: (1)

7   user-specific codes; (2) user-specific hardware keys; (3) machine-specific codes and

8   hardware keys; (4) software files with licensed features and optional add-on controls; (5)

9   machine-specific configuration files that control compatibility between the systems and

10  software and/or the systems and replacement parts; and (6) software disabling if a user

11  attempts to make use of an unlicensed feature. (*See* Am. Compl. ¶¶ 31-35, 71-72.)

12      The complaint also explains how these technological measures work. (*See id.*)

13  User-specific access codes and hardware keys "enable the software access and control

14  features for a particular registered user" by permitting "access to enabled Philips tools

15  and features based on a user's registered access authorization level." (*See id.* ¶ 32.)

16  Machine-specific controls "only permit user access to the features and tools that have

17  been enabled on a specific machine." (*See id.*) Licensed feature controls limit what

18  features users can access on a specific machine, control access to protected software, and

19  limit the options available for use on a specific machine. (*See id.* ¶¶ 33-34.)

20      The court concludes that these allegations sufficiently plead that Philips'

21  Ultrasound Systems are protected by "a technological measure that effectively controls

22  access to a work" as required by §§ 1201(a)(1) and (a)(2). *See, e.g.*, *Synopsys, Inc. v.*

*AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1072 (S.D. Cal. 2019) (finding sufficient allegations that "the software will not run without the licensee 'checking out' a license key from a server that is designed to only grant such keys to approved licensees" and stating that "[e]very court to consider the issue has found that similar methods of license-control satisfy the 'effectively controls' requirement of the DMCA"); *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL 4848387, at *7 (N.D. Cal. Oct. 1, 2019) ("Synopsys's license key system requires the use of an encrypted control code to access Synopsys software. The license key system therefore 'requires the application of information . . . to gain access to the' Synopsys software.") (quoting 17 U.S.C. § 1201(a)(3)(B)).

Philips has also adequately alleged that Defendants took actions to "circumvent" Philips' access controls. Under § 1201(a), "to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Numerous paragraphs in the complaint detail the steps Defendants allegedly took to circumvent and modify Philips' access controls. (*See, e.g.*, Am. Compl. ¶¶ 36, 39-46, 67-72, 81, 137, 138.) At a high level, Philips alleges that Defendants remove the hard drive from the Ultrasound Systems and run the Adepto program on the hard drive. (*See, e.g.*, ¶ 42.) The Adepto program changes configuration files and software files in order to enable unlicensed options on the hard drive. (*See id.* ¶¶ 42, 57.) Philips also alleges that Defendants use Adepto to hack onboard tools to force compatibility with otherwise incompatible

transducer parts.  (*See id.* ¶¶ 69, 71-72.)  These allegations sufficiently plead that

Defendants took actions to "circumvent" Philips' access controls under § 1201(a).  *See,*

*e.g.*, *Davidson & Assocs. v. Jung*, 422 F.3d 630, 640 (8th Cir. 2005) (finding a DMCA

violation where the defendant developed and used an "emulator" that "allowed . . . access

[to] Battle.net mode features without a valid or unique CD key"); *Dish Network, L.L.C. v.*

*Vicxon Corp.*, No. 12-CV-9-L WVG, 2013 WL 3894905, at *7 (S.D. Cal. July 26, 2013)

(finding that use of "piracy software" to circumvent a television provider's security

measures satisfied the "circumvention" requirement of § 1201(a)).

Because Philips has sufficiently alleged that Defendants "circumvent[ed] a

technological measure that effectively controls access to a work," *see* 17 U.S.C. §

1201(a)(1)(A); *see also id.* § 1201(a)(2), the court DENIES Defendants' motion to

dismiss Philips first cause of action.

2.    <u>Modifying CMI</u>

Defendants allege that Philips' second cause of action—which alleges that

Defendants modified Philips' CMI in violation of the DMCA, 17 U.S.C. § 1202—should

be dismissed because Philips failed to sufficiently allege "the existence of CMI or that

any CMI has been falsified, removed, or modified."  (*See* Mot. at 18.)  Section 1202

defines CMI as "information conveyed in connection with copies . . . of a work."  17

U.S.C. § 1202(c).  Section 1202(c) lists the following types of CMI:

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

(6) Terms and conditions for use of the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

*Id.*

Section 1202(a) states that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provide or distribute false CMI. *See id.* § 1202(a)(1)-(2). Section 1202(b) prohibits removal or alteration of CMI, distribution of CMI with knowledge that the CMI has been removed or altered, and distribution of copyrighted works with knowledge that CMI conveyed with the work has been removed or altered. *See id.* at § 1202(b)(1)-(3). A violation of § 1202(b) also requires a showing that the defendant knew or had "reasonable grounds to know" that its actions would "induce, enable, facilitate, or conceal an infringement of any right under this title." *Id.*

//

The court agrees with Defendants that Philips fails to plead a plausible claim for relief under 17 U.S.C. § 1202. Philips attempts to allege violations of §§ 1202(a) and 1202(b). (*See* Am. Compl. ¶¶ 114-15.) However, the only CMI identified with any specificity in the complaint is "the terms and conditions of the use of the software," which Philips alleges resides on "machine readable configuration files."[3] (*See id.* ¶ 108.) Although terms and conditions qualify as CMI under § 1202(c), *see* 17 U.S.C. § 1202(c)(6), Philips offers no factual details explaining how Defendants falsify, remove, or alter Philips' terms and conditions (*see generally* Am. Compl. ¶¶ 103-30). Instead, Philips includes only boilerplate allegations that "Summit's business of modifying Philips' Ultrasound Systems includes modifications to such [CMI]." (*See id.* ¶ 109.) Without factual detail to explain what modifications Defendants make to the terms and conditions, how Defendants make those modifications, or the method by which Defendants distribute this modified CMI, Philips' complaint offers only "'naked assertion[s]' devoid of 'further factual enhancement,'" which is insufficient to survive a challenge under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

//

---

[3] Philips' opposition offers a confusing argument that certain "software files," "option files," "license management software," "automated loading system," and "machine specific configuration files" all "qualify as CMI." (*See* Resp. at 9-10.) However, neither the opposition nor the complaint explains with any clarity how these types of systems and files constitute CMI under the definition provided in § 1202(c). (*See generally* Am. Compl. ¶¶ 103-130; Resp. at 9-10.) Moreover, even if Philips' systems and files constituted CMI, the complaint still provides no detail regarding the manner in which Philips falsifies, removes, or alters this CMI in a way that violates 17 U.S.C. § 1202. (*See generally* Am. Compl. ¶¶ 103-130.)

Accordingly, the court GRANTS Defendants' motion in part and dismisses Philips' second cause of action. However, because the court cannot conclude on the basis of the record before it that Philips could not re-plead their 17 U.S.C. § 1202 claim to plausibly allege that Defendants modified Philips' CMI, the court grants Plaintiffs leave to amend this claim. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

3.    <u>DTSA and UTSA</u>

Defendants allege that Philips' DTSA and UTSA claims fail "to allege the existence of protectable trade secrets" with sufficient specificity.[4] (*See* Mot. at 21-24.) The UTSA defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> > (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

//

---

[4] Defendants' reply brief also argues that Philips failed to allege that Defendants misappropriated Philip's alleged trade secrets. (*See* Reply at 11.) However, the court declines to consider this argument because Defendants raised it for the first time in reply. *See Coos Cty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("We do not consider arguments raised for the first time in the reply brief.").

RCW 19.108.010(4).  The DTSA provides a similar definition of "trade secret."  *See* 18

U.S.C. § 1839(3); *see also MUFG Union Bank, N.A. v. Tyler*, No. C17-1766RSM, 2018

WL 2046290, at *3 (W.D. Wash. May 2, 2018) (noting that "[t]he federal DTSA

provides nearly identical definitions" to the UTSA's definitions).  "Although the

complaint need not 'spell out the details of the trade secret,' a plaintiff seeking relief for

trade secret misappropriation must identify the trade secret 'with sufficient particularity

. . . to permit the defendant to ascertain at least the boundaries within which the secret

lies.'"  *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D.

Wash. 2019) (quoting *SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300

JVS (ANx), 2012 WL 12893935, at *2 (C.D. Cal. Oct. 29, 2012)); *see also MAI Sys.*

*Corp. v. Peak Comp., Inc.*, 991 F.2d 551, 522 (9th Cir. 1993); *Robbins, Geller, Rudman*

*& Dowd, LLP v. State*, 328 P.3d 905, 911 (Wash. Ct. App. 2014) ("The alleged unique,

innovative, or novel information must be described with specificity and, therefore,

'conclusory' declarations that fail to 'provide concrete examples' are insufficient to

support the existence of a trade secret.") (quoting *McCallum v. Allstate Prop. & Cas. Ins.*

*Co.*, 204 P.3d 944, 950-51 (Wash. Ct. App. 2009)).

Philips has alleged the existence trade secrets with sufficient.  Philips alleges that

the following either constitute Philips' trade secrets or contain Philips' trade secret

material:  the software in the Ultrasound Systems (*see* Am. Compl. ¶¶ 29, 81, 132-36);

the access control systems in place in the Ultrasound Systems (*see id.* ¶ 132-36); "tools

for bypassing access controls to access system file structures and for enabling copyright

protected software options" within the Ultrasound Systems (*see id.* ¶¶ 70, 72, 138-39);

and "other software features," including "onboard service, calibration, and diagnostic features and tools" used in the Ultrasound Systems (*see* Am. Compl. ¶ 36). These allegations provide Defendants with "sufficient particularity . . . to ascertain at least the boundaries within which the secret lies.'" *Bombardier Inc.*, 383 F. Supp. 3d at 1178 (citations omitted); *see also T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) (finding the identification of "information about the end effector" and "sequence files" and allegations describing "security measures, including limits on access" to state a valid claims for trade secret misappropriation). Accordingly, the court DENIES Defendants' motion to dismiss Philips' DTSA and UTSA causes of action.

### 4. False Advertising

Defendants allege that Philips' false advertising claim is based entirely on statements "regarding the legality of Defendants' services," which Defendants claim are not actionable under the Lanham Act. (*See* Mot. at 8-10.) "Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in advertising and sales in interstate commerce." *Kische USA LLC v. Simsek*, No. C16-0168JLR, 2016 WL 7212534, at *9 (W.D. Wash. Dec. 13, 2016) (citations omitted). The elements of a false advertising claim under Section 43 are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Id.* (citing *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Because liability under the Lanham Act requires a "false or misleading representation of fact," *see* 15 U.S.C. § 1125(a)(1), "[s]tatements of opinion are not generally actionable under the Lanham Act," *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). As a general rule, statements that a product or service is "legal" are inactionable statements of opinion because the statements "purport to interpret the meaning of a statute or regulation." *See id.*; *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016) (noting that advertisements that claimed products were "legal" or "DSHEA-compliant" were properly characterized as "inactionable opinion" statements for purposes of the Lanham Act). However, there is a "well-established exception" to the bar against false advertising claims based on opinion statements for an opinion statement "by a speaker who lacks a good faith belief in the truth of the statement." *See id.* (citing *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010)).

Here, the court agrees with Defendants that the statements Philips bases their false advertising claim on are inactionable statements of opinions about the legality of

Defendants' Adepto product and related services. (*See, e.g.*, Am. Compl. ¶ 49 ("Summit falsely advertises to the public that Summit's hacking is a legal solution to the 'Current issue in the market' that OEM systems are protected by copyright."), ¶ 55 ("Summit, and specifically Summit's CEO personally, then further markets their Adepto hacking tool as a tool that allows Summit to lawfully provide services as an ISO without infringing Philips' (an OEM) copyright."), ¶ 168 ("Summit explains that this method of circumventing Philips access controls is legal, and avoids liability to healthcare providers arising from unlawful services.").) Indeed, Philips goes so far as to allege that Defendants' marketing is false and misleading because "Summit's techniques are unlawful as described throughout this complaint." (*See id.* ¶169.) Until the court and the trier of fact adjudicate this case and determine whether Defendants' actions are unlawful, however, statements about the legality of Defendants' actions are inactionable statements of opinion for purposes of the Lanham Act. *See Coastal Abstract Serv., Inc.*, 173 F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."). Moreover, the bad faith exception to the bar against opinion statements does not save Philips because Philips has not adequately pleaded that Defendants lacked a good faith belief in the truth of their statements about the legality of Adepto and Defendants' services. (*See generally* Am. Compl. ¶¶ 167-75); *ThermoLife Int'l, LLC*, 648 F. App'x at 614.

In their opposition, Philips identifies a handful of "false statements of fact" in the complaint that Philips argues are sufficient to state a false advertising claim. (*See* Resp.

at 17.)  Although the court recognizes that Philips' 218 paragraph complaint includes a handful of statements by Defendants that could be construed as "statements of fact," Philips cannot re-write their complaint in their opposition brief.  The complaint repeatedly makes clear that the gravamen of Philips' false advertising claim is Defendants' claim that their products and services are legal.  (*See* Am. Compl. ¶¶ 168-71.)  Those statements are opinion statements that cannot serve as the basis for a Lanham Act false advertising claim.

Accordingly, the court GRANTS Defendants' motion in part and dismisses Philips' fifth cause of action.  However, the court grants Philips leave to amend their false advertising claim in order to base their claim on actionable statements of fact or plead facts to support application of the bad faith exception to the Lanham Act's bar against opinion statements as a basis for a false advertising claim.  *See Lopez*, 203 F.3d at 1127.

5.    CPA

To state a claim under Washington's CPA, RCW ch. 19.86, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered."  *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 17 (Wash. 2007).  With respect to the first element, the Washington Supreme Court holds that a CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or

practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut.*

*Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

Defendants argue that the court should dismiss Philips' CPA claim because Philips "failed to allege facts that support the Defendants committed an unfair or deceptive act." (Mot. at 10.)  With the exception of a handful of legal citations, Philips' CPA claim is essentially identical to their false advertising claim.[5]  (*Compare* Am. Compl. ¶¶ 167-75 *with id.* ¶¶ 176-84.)  Claims under the CPA are "substantially congruous" with Lanham Act unfair competition claims.  *See Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 1903431, at *11 (W.D. Wash. May 11, 2010).  Thus, the court's conclusion that Philips failed to allege a false or misleading representation of fact under the Lanham Act "applies with equal force to defeat" Philips' CPA claim.  *See Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 905 F. Supp. 2d 1235, 1252 (W.D. Wash. 2012) (concluding that "Lanham Act, CPA, and unfair competition claims are sufficiently congruous that failure of proof as to the element of falsity or deception applies with equal force to . . . claims under all three").

Accordingly, the court GRANTS Defendants' motion in part and dismisses Philips' sixth cause of action without prejudice.  However, the court grants Philips leave

---

[5] Philips argues that "a claim for unfair competition may be predicated on the violation of any statute, act, or unfair practice," which means "any of the causes of action alleged in the [complaint] could form the predicate for Plaintiffs' [CPA] claim." (*See* Resp. at 15.)  But Philips did not base their CPA claim on each of the causes of action in the complaint; instead, Philips based their CPA claim on the exact same factual allegations as their false advertising claim. (*See* Am. Compl. ¶¶ 176-84.)  Thus, Philips' speculation about whether Philips' other causes of action could sustain their CPA claim is irrelevant.

1  to amend their CPA claim to allege facts that show that Defendants engaged in an unfair

2  or deceptive act under the CPA.  *See Lopez*, 203 F.3d at 1127.

3     6.  Contributory Copyright Infringement

4     Philips' seventh cause of action for copyright infringement alleges that

5  Defendants' actions "constitute direct and/or contributory copyright infringement." (*See*

6  Am. Compl. ¶ 200.)  Defendants argue that Philips' contributory copyright infringement

7  claim should be dismissed because Philips failed to adequately allege direct copyright

8  infringement by a third party.[6]  (*See* Mot. at 5-6.)  "Contributory liability requires that a

9  party '(1) has knowledge of another's infringement and (2) either (a) materially

10 contributes to or (b) induces that infringement.'"  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d

11 723, 745 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788,

12 795 (9th Cir. 2007)).  Accordingly, a showing of "direct infringement by third parties" is

13 a necessary "threshold" to finding a defendant liable for contributory infringement.  *See*

14 *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007).

15    The court concludes that Philips' complaint adequately alleges a claim for

16 contributory copyright infringement.  The complaint explains in detail how Defendants'

17 services and the Adepto tool infringe Philips' copyrights.  (*See, e.g.*, Am. Compl.

18 ¶¶ 41-45, 50-56, 60-62, 192-99.)  Philips alleges that Defendants distribute the Adepto

19 tool to Summit's customers and train them to use Adepto, which enables Summit's

20 customers to commit copyright infringement.  (*See, e.g.*, Am. Compl. ¶ 216 ("[Mr.]

21

---

22  [6] Defendants do not move to dismiss Philips' direct copyright infringement claim or their claim that Mr. Nguyen is vicariously liable for Summit's direct infringement.  (*See* Mot. at 5-6.)

Nguyen has also personally trained . . . Summit's customers in how to make use of the Adepto hacking tool in order to create copies of Philips copyrighted software and log files."); *see also id.* ¶¶ 7, 42, 45, 207-08, 215.) These allegations are sufficient to state a claim for contributory copyright infringement. Accordingly, the court DENIES Summit's motion to dismiss Philips' contributory copyright infringement claim.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Summit's motion to dismiss (Dkt. # 26) as follows:

- The court DENIES Defendants' motion to dismiss Philips' claim for circumventing a technological measure in violation of the DMCA, 17 U.S.C. § 1201 (*see* Am. Compl. ¶¶ 73-102);

- The court GRANTS Defendants' motion to dismiss Philips' claim for modifying CMI in violation of the DMCA, 17 U.S.C. § 1202 (*see* Am. Compl. ¶¶ 103-30), but with leave to amend that claim;

- The court DENIES Defendants' motion to dismiss Philips' claims for trade secret misappropriation in violation of the DTSA, 18 U.S.C. § 1836 (*see* Am. Compl. ¶¶ 131-148), and the UTSA, RCW ch. 19.108 (*see* Am. Compl. ¶¶ 149-66);

- The court GRANTS Defendants' motion to dismiss Philips' claim for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (*see* Am. Compl. ¶¶ 167-75), but with leave to amend that claim;

//

- The court GRANTS Defendants' motion to dismiss Philips' claim for unfair competition in violation of the CPA, RCW 19.86.020 *et seq.* (*see* Am. Compl. ¶¶ 176-84), but with leave to amend that claim; and

- The court DENIES Defendants' motion to dismiss Philips' claim for contributory copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101, 501 (*see* Am. Compl. ¶¶ 185-218).

Philips shall file an amended complaint, if any, alleging facts that resolve the issues stated herein, no later than twenty days from the filing date of this order.

Dated this 30th day of March, 2020.

JAMES L. ROBART
United States District Judge